Learned, P. J.
The plaintiff and one Noble, in the summer of 1884, at Lake Placid, had interviews in regard to the insurance of plaintiff’s house and personal property; and they agreed on such insurance to the amount of $15,320, which Noble was to procure. Part of this amount was placed with defendants. Noble prepared a writing, which is (with one exception) the written part of the policy issued afterwards by defendants. This writing he sent to New York, where his office was. There copies were made by a hectograph. One of these copies was pasted on the policy of defendants, forming what is usually the written part. As the paper was written by Noble, it contained the words, “Privileged * * * for other insurance.” When the policy was sent by defendants to Noble, at Lake Placid, there had been added the words, “(total amount, including' this policy, not to exceed $15,320.)” It was received about August 30, 1884, by Noble, and by him delivered to plaintiff. Noble also delivered other policies in other companies to plaintiff, at that time, amounting, with this, to $15,320. The written parts in those policies were made in the same manner. But no limit as to other insurance was in those other policies. After delivering this policy, Noble collected the premium from plaintiff, $82.12; retained therefrom his commission, 10 percent; and sent the rest to defendants under an arrangement with them. It will be seen, therefore, from the above facts, that the restriction on the amount of other insurance was not made by Noble, or by agreement between him and plaintiff. It was inserted by defendants in the paper sent them by Noble’s office, and was thus put into the policy. So far as appears, this was done without the knowledge of Noble or of plaintiff. In August, 1885, the defendants sent Noble at Lake Placid a renewal receipt, which he delivered to plaintiff, receiving the amount and retaining his commission; and the same the following year. There is evidence that at the time of these two renewals Noble thought the insurance on the property was less than $10,000. The policy contains this language: “This policy shall become void unless consent in writing is indorsed by the company hereon, * * * if the assured shall have or shall hereafter obtain any other policy or agreement for insurance * * * on the property.” In connection must be read the language above given. “Privileged * * * for other insurance, (total amount, including this policy, not to exceed $15,320.)” The total amount of insurance at the time of loss was $18,330. The learned judge held that by reason of this over-insurance the plaintiff could not recover. The plaintiff urges that there was a consent to other insurance; that, therefore, although the limit was exceeded, the contract was not avoided; that the defendants must show some injury,— some increase of risk. But we cannot give that meaning to the policy. The company could qualify their consent to other insurance, and they did so. The difficulty is that probably neither Noble nor the plaintiff noticed the qualification. But we see nothing in the facts to take this case out of the ordinary rule that parties may make such contracts (not immoral) as they choose, and then that they must abide by them. Defendants had a right to limit, and they did limit, their liability as insurers of the plaintiff. They said they would not be liable in a certain event. That event, by plaintiff’s act, happened, and they have done nothing to waive the limitation they had imposed. We see nothing in any of the dealings between Noble and plaintiff which could be construed as a waiver by defendants. No agreement had existed between plaintiff and defendants until the policy was delivered. Noble did not con *172 tract or pretend to contract for them. He delivered the policy, and collected the money, as an express company might have done. Very possibly, as held in Brown v. Insurance Co., 10 N. Y. St. Rep. 412, the time when Noble delivered the policy was the time when it took effect; or, as held in Bodine v. Insurance Co., 51 N. Y. 117, if he had delivered it without collecting the premium, the company would have been bound; and perhaps it is not very important what name be given,—whether one acting like Noble be called a broker or an agent. The real question is what authority did he have, or might he by acts of the company be believed to have had, and what did he do. Now, we do not find proof that when Noble delivered the policies he knew that any ■others than his own were on the property. All that he says is that in the summer of 1884 he learned that plaintiff had insurance on his property. Whether he knew that this was in existence August 30th does not appear; and in the proofs of loss the other insurance mentioned is of a date subsequent to August 30, 1884. Nor is Noble’s letter of August 30, 1886, any evidence that, at the time of either renewal, Noble knew that plaintiff had more than $15,320. He says that'the year before the last (that is, 1884) plaintiff carried “nearly double” $9,730. That is a very vague expression; and, besides, it does not indicate that Noble knew this fact at the time of issuing these policies, or at the time of any renewal. He might have acquired the knowledge afterwards. We are then unable to see any ground upon which plaintiff can be relieved from the effect of the plain agreement of the policy. Judgment affirmed, with costs.
Landon and Ingalls, JJ., concur.